UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JAMI R. L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:25-cv-00029-TWP-KMB |
| | ) |
| FRANK BISIGNANO, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Jami R. L. applied for disability benefits and disability widow's benefits from the Social Security Administration ("SSA") on July 27, 2022, and August 26, 2022, respectively, alleging an onset date of March 10, 2022. [Dkt. 9-2 at 11.] The Administrative Law Judge (the "ALJ") issued a decision on February 29, 2024, concluding that Jami was not disabled and therefore not entitled to receive the requested benefits. [Dkt. 9-2 at 11-32.] The Appeals Council denied her request for review on December 17, 2024. [Dkt. 9-2 at 2-7.] On February 19, 2025, Jami timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the Complaint. For the reasons detailed herein, the Magistrate Judge recommends that the District

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

1

Judge **REVERSE and REMAND** the Commissioner's decision finding that Jami was not disabled.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.

*Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[2]

Jami was 51 years old on the alleged disability onset date. [Dkt. 9-2 at 30.] She previously worked as a home attendant. [*Id.* at 30.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Jami was not disabled. Specifically, the ALJ found as follows:

- At Step One, Jami has not engaged in substantial gainful activity since March 10, 2022, the alleged onset date. [*Id.* at 14.]

- At Step Two, Jami has the following severe impairments: osteoarthritis and depression. [*Id.*]

- At Step Three, Jami does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 17.]

- After Step Three but before Step Four, Jami has the RFC "to perform light work . . . except . . . [she] can stand and/or walk for four hours in an eight-hour workday and can sit for six hours per eight-hour workday. She can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. [She] can occasionally balance, . . . . . She can occasionally stoop, kneel, crouch, and crawl. [She] can understand, remember, and carry out detailed tasks of moderate complexity. She can perform jobs with no requirement to maintain a specific production rate pace. [She] is able to engage in occasional and superficial interaction with the general public, as well as occasional and superficial interaction with co-workers and supervisors (other than what is necessary for task instruction and task completion)." [*Id.* at 19.]

- At Step Four, Jami is unable to perform any past relevant work. [*Id.* at 30.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Jami's age, education, and RFC, there were jobs that existed in the national economy that Jami could have performed through the date of the decision, including router, marker, and collator operator. [*Id.* at 31.]

## III. DISCUSSION

Jami raises three issues for the Court's review, each of which contain multiple sub-issues:

---

[2] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

(1) whether the ALJ impermissibly used a lay interpretation of significant objective medical evidence; (2) whether the RFC properly included all of Jami's limitations; and (3) whether the ALJ's analysis of Jami's subjective symptoms was flawed.  [Dkt. 12 at 8-30.]  The undersigned begins with the third issue regarding the ALJ's analysis of Jami's subjective symptoms—specifically, whether the ALJ improperly discounted the severity of Jami's reported symptoms based on a lack of treatment without examining the possible reasons for the lack of treatment.  The undersigned does not reach the other issues, believing that the issue addressed is dispositive.

    **A. The ALJ erred by failing to make an adverse credibility determination regarding Jami's subjective symptoms due to her lack of treatment for them without considering whether there were good reasons for gaps in her medical treatment.**

Jami argues that the ALJ improperly discounted her reported symptoms and limitations based on a purported lack of treatment for them in violation of Social Security Rule ("SSR") 16-3p.  [Dkt. 12 at 30.]  Specifically, Jami argues that the ALJ improperly drew "inferences about [her] lack of treatment without exploring the reasons for the inaction, such as financial limitations . . . [, nor did the ALJ] consider the possibility that [her] severe depression may prevent her from submitting to treatment."  [Dkt. 12 at 30.]  Jami points to evidence that she has not been able to work due to pain, was undergoing financial difficulties, and had mental health issues that "kept her from leaving the house to the point where she had panic attacks simply thinking about leaving."  [*Id.* (citing dkt. 9-2 at 68; dkt. 9-7 at 377, 594).]

The Commissioner argues that the ALJ is permitted to consider "the nature and frequency of treatment sought by a claimant."  [Dkt. 13 at 24.]  Specifically, the Commissioner argues that "SSR 16-3p does not require ALJs to ask a claimant about his or her failure to seek treatment, rather, '[t]hat rule provides that an ALJ must *consider* possible reasons for a failure to seek treatment.'"  [*Id.* (citing *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021)).]  The Commissioner contends that the ALJ "acknowledged" Jami's pain and financial stressors, [*id.*

5

(citing dkt. 9-2 at 13-27)], but "there is no indication that she reported the same obstacles to her providers," [dkt. 13 at 25]. Relatedly, the Commissioner argues that Jami failed to point to any evidence that she did not seek medical treatment due to mental health or financial issues. [*Id.*]

In reply, Jami relies on essentially the same arguments as in her opening brief. She argues that an ALJ is required to "address reasons for limited or conservative treatment before using it to discredit symptoms," but "here, the ALJ failed to do so," even though Jami presented evidence of her financial problems and testified that her mental health limitations led her to not want to leave the house. [Dkt. 15 at 15 (citing dkt. 9-2 at 68; dkt. 9-7 at 377, 594).]

SSR 16-3p "provides that an ALJ must consider possible reasons for a [claimant's] failure to seek treatment." *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (citing *Tonya R. v. Saul*, 2020 WL 1675666, *3 (N.D. Ill. Apr. 6, 2020)). In considering such reasons, an ALJ "may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *see Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("An ALJ may need to question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." (citation and quotation marks omitted)); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("The ALJ must not draw any inferences about a claimant's condition from [infrequent treatment or failure to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care."). It is reversible error for an ALJ to make an adverse credibility determination based on a lack of treatment without determining whether the lack of treatment was justifiable for other reasons. *See Murphy*, 759 F.3d at 816 (holding that "the ALJ's credibility determination is not supported by substantial evidence"

6

because, among other reasons, "the ALJ did not ask important questions to determine if [the claimant's lack of treatment and noncompliance with treatment] were justifiable"); *Shauger*, 675 F.3d at 696 (agreeing with the claimant's argument that "the ALJ could not discredit his testimony based on a perception of unexplained gaps in his treatment history" without questioning the claimant about those gaps, which could be caused, for example, by "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects").

Here, the ALJ explicitly discounted the severity of Jami's reported symptoms based on a relative lack of treatment. Throughout the ALJ's summary of Jami's reported symptoms and the medical treatment sought for them, the ALJ repeatedly pointed out gaps in treatment, a lack of treatment, or the failure to seek treatment. [*See, e.g.*, dkt. 9-2 at 21-23, 27.] Then, in assessing the credibility of Jami's reported symptoms, the ALJ concluded as follows: "As described above, the record reflects an overall treatment course disproportionate to the alleged severity of the claimant's impairments. Simply, if the claimant's symptoms and limitations were as severe as alleged, I would expect she would have sought treatment for her symptoms more than that which is portrayed in the record." [*Id.* at 27.]

Nowhere in the ALJ's analysis did he "consider possible reasons for a [claimant's] failure to seek treatment," as is required by SSR 16-3p. *Deborah M.*, 994 F.3d at 790. Nor did the ALJ question Jami at the hearing regarding potential reasons for the lack of treatment. [*See* Dkt. 9-2 at 53-78.] Nevertheless, the ALJ heavily relied on a purported lack of treatment to conclude that Jami's symptoms were not as severe as she alleged. [*Id.* at 27.] The Seventh Circuit Court of Appeals has made clear that ALJ decisions such as these are not supported by substantial evidence. *See Murphy*, 759 F.3d at 816 (holding that "the ALJ's credibility determination is not supported by substantial evidence" because, among other reasons, "the ALJ did not ask important questions to

7

determine if [the claimant's lack of treatment and noncompliance with treatment] were justifiable"); *see also Shauger*, 675 F.3d at 696.

None of the Commissioner's arguments against this conclusion are persuasive. First, contrary to the Commissioner's argument, [dkt. 13 at 24], the ALJ's mere acknowledgment of record evidence that Jami had mental health issues and financial stressors during his recitation of the record evidence does not show that the ALJ *considered* those as possible explanations for the gaps in, or lack of, treatment. Again, SSR 16-3p and binding Seventh Circuit law make clear that the ALJ must "consider possible reasons for a [claimant's] failure to seek treatment," *Deborah M.*, 994 F.3d at 790, which the ALJ here did not do.

Second, the Commissioner points out that Jami did not report any barriers to treatment to her providers or testify or provide other evidence that she failed to seek medical treatment due to mental health or financial issues.[3] [Dkt. 13 at 25.] But it is the ALJ who must consider possible reasons for the failure to seek treatment if he relies on that failure to make an adverse credibility determination. *See Tonya R. v. Saul*, 2020 WL 1675666, *4 (N.D. Ill. Apr. 6, 2020) ("If the ALJ planned to rely on the failure to seek treatment in his analysis, he had an independent duty to develop the record to consider whether that treatment gap was caused by Plaintiff's homelessness, and his failure to do so violates SSR 16-3p and requires remand."). If the ALJ needs more information about the possible reasons, the ALJ "may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek

---

[3] The Commissioner's reliance on *William J. L. v. Comm'r of Soc. Sec.*, 2023 WL 6388011 (N.D. Ind. Oct. 2, 2023), is misplaced, as it supports the conclusion the undersigned reaches here. *William J.L.* held that the ALJ did not violate SSR 16-3p because the claimant's testimony included the reasons the claimant pursued a conservative course of treatment and, critically, the ALJ noted those reasons in the decision. *Id.* at *14. Here, there was no testimony regarding the reasons for Jami's gaps in treatment, and the ALJ did not at all assess any possible reasons for such gaps.

medical treatment or fully comply with prescribed treatment." *Murphy*, 759 F.3d at 816; *see Shauger*, 675 F.3d at 696. The ALJ failed to consider possible reasons for Jami's failure to seek treatment, and, if he lacked sufficient information to do so, he could have—but did not—question her at the hearing regarding possible reasons.

In sum, "the ALJ could not discredit [Jami's] testimony [regarding his subjective symptoms] based on a perception of unexplained gaps in [her] treatment history" without considering the reasons for those gaps. *Shauger*, 675 F.3d at 696. Because the ALJ in this case did not do so, substantial evidence fails to support his decision and the undersigned believes that remand is required. *Murphy*, 759 F.3d at 816.

**B.    Other Arguments**

The Parties disagree about the other issues raised by Jami in her opening brief. Having found that it is necessary to recommend remand for the reasons detailed above, the undersigned declines to substantively address the Parties' remaining arguments. Either Party may raise those arguments on remand if appropriate to do so.

### IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision finding that Jami was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections **within 14 days** of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

So RECOMMENDED.

Date: 1/21/2026

_Kellie M. Barr_
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email